# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LORI ANNE COLEMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-17-854-BMJ |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Lori Anne Coleman, seeks judicial review of the Social Security Administration's denial of her application for disability insurance benefits (DIB). The parties have consented to the exercise of jurisdiction over this matter by a United States Magistrate Judge. *See* 28 U.S.C. § 636(c). The Commissioner has filed the Administrative Record (AR) [Doc. No. 12], and both parties have briefed their positions.[1] For the reasons stated below, the Court reverses the Commissioner's decision and remands the matter for further proceedings.

## I.  Procedural Background

On June 17, 2016, an Administrative Law Judge (ALJ) issued an unfavorable decision finding Plaintiff is not disabled and, therefore, not entitled to DIB. AR 11-19. The Appeals Council denied Plaintiff's request for review. *Id.* at 1-5. Accordingly, the ALJ's decision constitutes the Commissioner's final decision. *See Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011). Plaintiff timely commenced this action for judicial review.

---

[1] Citations to the parties' briefs reference the Court's CM/ECF pagination.

## II. The ALJ's Decision

The ALJ followed the multi-step sequential evaluation process required by agency regulations. *See Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009) (explaining process); *see also* 20 C.F.R. § 404.1520. Following this process, the ALJ first determined that Plaintiff meets the insured status requirements for DIB through December 31, 2018 and has not engaged in substantial gainful activity since November 2, 2013, her alleged onset date. AR 13.

At step two, the ALJ determined that Plaintiff suffers from severe degenerative disease, but that, at step three, her impairment does not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1. *Id.* at 13, 16.

The ALJ next determined Plaintiff's residual functional capacity (RFC), concluding that she can perform sedentary work with exertional limitations. *Id.* at 16. Finally, at step four, relying on a vocational expert's (VE) testimony, the ALJ found Plaintiff can perform her past relevant work. *Id.* at 19. Therefore, the ALJ concluded that Plaintiff is not disabled for purposes of the Social Security Act. *Id.*

## III. Claims Presented for Judicial Review

Plaintiff presents two claims for review. First, Plaintiff alleges the ALJ erred in rejecting the consultative examiner's opinion that she can only sit for three hours total in an eight-hour workday. *See* Pl.'s Br. at 12-17. Second, Plaintiff claims the ALJ also erred in rejecting the medical expert's opinion that her medications limit her ability to "function[] coherently or drive[] safely." *Id.* at 17-20 (citing AR 39). Because the Court finds reversal necessary on Plaintiff's second argument, it does not address her first.[2]

---

[2] The Court does note some concerns, which the ALJ may address on remand. First, the ALJ rejected the consulting examiner's opinion on Plaintiff's sitting limitations, on grounds that they were inconsistent with the same physician's "narrative of the exam," AR 18, but failed to discuss

## IV.  Standard of Review

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied.  *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009); *see also Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (holding that the court only reviews an ALJ's decision "to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied" and in that review, "we neither reweigh the evidence nor substitute our judgment for that of the agency" (citations and internal quotation marks omitted)).

## V.  Analysis

Orthopedist Dr. Henry S. Urbank, Jr., M.D.,[3] reviewed Plaintiff's medical file and offered his expert testimony, at the SSA's request.  AR 33-41.  Dr. Urbank expressed two opinions.  First, he stated that he did not believe that Plaintiff's severe impairment meets or equals Listing 1.04A.  *Id.* at 38.  Second, he opined that Plaintiff "takes way too much medicine" and noted that he "wouldn't have her drive [his] children around taking all those pills."  *Id.* at 37.  He then explained:

> I wouldn't have her work based on her - - her pain treatment.  She takes way too much medicine.  She's told you that.  She's accurate there.  I don't know anyone who takes what she's taking and functions coherently or drives safely.

---

other medical evidence showing that Plaintiff routinely complained that her pain was worse with sitting.  *See id.* at 294, 305, 321, 331, 342, 352, 363, 375, 386, 398, 409, 421, 433, 444, 454, 465, 476, 487, 498, 512, 524, 535, 547, 560, 572, 585, 597, 609, 627, 640, 653, 665, 675, 690, 703, 716, 728, 740, 753.  Additionally, the Court questions the ALJ's assumption that Plaintiff can still perform her past relevant work if she is able to sit for only three hours total in an eight-hour work day.  *See id.* at 18.  The ALJ asked the VE if a sit/stand option would preclude the performance of Plaintiff's past relevant work, but did not question the expert regarding whether that work can be performed if a claimant can only sit for three hours *total* in a workday.

[3] Dr. Urbank's last name is spelled differently throughout the record and the parties' briefs.  The Court has used Dr. Urbank's name as he presents it on his "Curricula Vitae."  AR 879.

3

*Id.* at 39. When asked, the expert clarified that he did not believe Plaintiff was abusing her medications, and was instead taking her medications as prescribed, for her "well defined" severe impairment, which was "a big deal." *Id.* at 40. After the expert's testimony, Plaintiff's attorney stated that he wished they had asked Dr. Urbank how much he believed Plaintiff would be "off task" based on her medication. *Id.* at 42.[4] The ALJ indicated further questioning on that front was unnecessary because "we can assume that was part of his answer" and "that's fine." *Id.*

Ultimately, the ALJ gave Dr. Urbank's opinion "great weight" but did not incorporate any functional limitations into Plaintiff's RFC related to her medication side-effects. *Id.* at 16, 18. The ALJ noted that: (1) Plaintiff's pain medications were reduced in 2015, (2) Plaintiff was able to adjust her medications in order to drive, and (3) other treatment notes showed Plaintiff's medications "allowed her to perform her activities of daily living" and reduce her pain "to a 4/10" which "allows her to work and do everything she needs to do." *Id.* at 17-18.

Even though he was a non-examining consultant, the ALJ was required to properly consider Dr. Urbank's opinion[5] and provide legitimate reasons for discounting it. *See* 20 C.F.R. § 404.1527(c). Plaintiff claims the ALJ committed legal error because the reasons she gave to reject Dr. Urbank's opinion were not legitimate. *See* Pl.'s Br. at 17-20. The Court agrees.

---

[4] The record indicates the attorney had wanted to ask the physician "based on the education you see, how much time in a given day would a person be off task, X percent." AR 42. The Court assumes the reference to "education" instead of "medication" was a simple misstatement or scrivener's error.

[5] The Commissioner argues that Dr. Urbank's comments were too "vague" to constitute an opinion on Plaintiff's functional limitations. Def.'s Br. at 20. The Court disagrees. While the expert certainly did not describe specific functional limitations, he clearly expressed his medical opinion that a person taking Plaintiff's medications would not function coherently. *See supra* at 3. More importantly, the ALJ agreed that the medical expert's comments would be considered as having expressed an opinion on Plaintiff's functional abilities. *See id.* at 3-4.

First, the ALJ implied that he was rejecting Dr. Urbank's opinion regarding Plaintiff's medication side effects because the record "shows that in mid-2015, [Plaintiff] changed pain management physicians" and her "narcotic pain medications were reduced." AR 17-18. But Dr. Urbank considered those very records and nevertheless opined that Plaintiff was taking too many medications to "function coherently" and drive safely.[6] *Id.* at 33 (indicating Dr. Urbank had reviewed Exhibits 1F through 6F, which include Plaintiff's 2015 pain management records), 37, 39. Indeed, the record reflects that after mid-2015, Plaintiff was still taking multiple narcotic medications at a time. *Id.* at 798, 799, 801, 813, 816, 824, 828, 832, 836, 840, 844, 847.

Second, the ALJ seemed to reject the expert's opinion because Plaintiff "took her pain medications so as not to prevent her ability to drive." *Id.* at 18. However, the ALJ did not explain how this is related to Dr. Urbank's opinion that someone taking that much medication could not function coherently, i.e., maintain concentration and pace, and it is also not completely accurate. That is, Plaintiff explained in her hearing that before 2015, she could manipulate her medication dosages so that she could drive *to work*, but said that the manipulation caused her additional limitations towards the end of the workday. *Id.* at 36. Moreover, Plaintiff testified that after 2015, she was unable to control the side effects (for purposes of driving) because of the unique nature of the medication. *Id.* at 62.

Third and finally, the ALJ appears to have rejected Dr. Urbank's opinion based on notations in the record that Plaintiff's pain medications reduced her pain to a "4/10" and "allows her to work and do everything she needs to do." *Id.* at 18. Notably, it is not entirely clear from

---

[6] Defendant suggests that it was "clear" that the ALJ considered Dr. Urbank's opinion as only relating to Plaintiff's pre-2015 medication dosages. Def.'s Br. at 18. But Dr. Urbank spoke of Plaintiff's medication dosages in the present tense (at a 2016 hearing) and never indicated that his concern about Plaintiff's ability to function coherently and safely drive was based on her pre-2015 dosages.

this language whether the physician meant Plaintiff could work and perform daily activities because of a pain reduction, or despite her pain medication. The ALJ obviously interpreted it as the latter, but in doing so, seemingly relied on boilerplate language while ignoring conflicting medical evidence. For example, Plaintiff's pain management physician from 2012 to mid-2015, made the *identical* "functional status" assessment in every single treatment note, finding: "With the pain medications, [Plaintiff's] pain is reduced to a 4/10. This allows her to work and do everything she needs to do." *Id.* at 294, 305, 321, 332, 342, 352, 364, 375, 386, 398, 409, 421, 433, 444, 454, 465, 476, 487, 498, 512, 524, 535, 547, 560, 572, 585, 597, 609, 627, 640, 653, 665, 675, 690, 703, 716, 728, 740, 753. The ALJ relied on this never-changing language despite the fact that many of these records pre-date Plaintiff's alleged onset date, *see id.* at 294, 305, 321, 332, 342, 352, 364, 375, 386, 398, 409, 421, and, more importantly, the "functional status" language *frequently* conflicted with the same physician's notations about Plaintiff's pain complaints, ability to remain working, and reporting of much higher pain assessments. *See id.* at 433, 444, 454, 465, 487, 498, 512, 524, 535, 547, 560, 572, 585, 597, 609, 627, 640, 653, 665, 675, 690, 728, 753. An ALJ must "consider all evidence" in the record when making a decision and may not pick-and-choose among medical reports. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012).[7]

---

[7] The Commissioner suggests that the ALJ *did* consider the inconsistencies between the treatment notes and the ever-repeated "functional status" language and found that the "functional status" statements were supported by Plaintiff's own reports of her medication effects "during the period prior to her alleged onset of disability" and by "concurrent imaging, which showed only minimal to mild abnormalities." Def.'s Br. at 21-22. So, Defendant argues that the ALJ "did not err" in relying on the "functional status" language to discount Dr. Urbank's testimony. *Id.* at 22. The Court finds no merit in this argument for two reasons. First, the ALJ simply did not articulate any such analysis, and this Court will not "engage in a post-hoc attempt to salvage the ALJ's decision . . . ." *Brown v. Colvin*, 595 F. App'x 803, 806 (10th Cir. 2014). Second, Defendant fails to explain how Plaintiff's description of her medication effects *before she alleges she became disabled* contradict Dr. Urbank's testimony. Indeed, the ALJ noted that Plaintiff complained to

Based on the foregoing, the Court finds that the ALJ failed to offer any *legitimate* reason for rejecting the relevant portion of Dr. Urbank's opinion.[8] Further, the Court further finds that the error is not harmless. Although Dr. Urbank was not asked to articulate how much Plaintiff was likely to be "off task" based on her medications, the ALJ conceded that "we can assume" the physician was expressing an opinion that she would be off task. AR 42. And, the VE testified that Plaintiff's past relevant work can likely not be performed with even a twenty percent reduction in concentration or pace. *Id.* at 66. Under such circumstances, the Court cannot know whether Plaintiff can perform her past relevant work and must therefore remand the Commissioner's decision.

## VI. Conclusion

For the reasons set forth, the Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

ENTERED this 23rd day of May, 2018.

_____
BERNARD M. JONES
UNITED STATES MAGISTRATE JUDGE

---

her pain management physician – only days after her alleged onset date – that "she was not getting adequate pain control and starting to miss work," AR 14, and Plaintiff testified that it was not until her medications dosages were increased that it began to affect her ability to work. *Id.* at 36, 48-49. Defendant also fails to explain why Plaintiff's "imaging" results discredited Dr. Urbank's opinion that Plaintiff was taking too much medication to function coherently. This is particularly true where Dr. Urbank also suggested that Plaintiff's medications were properly prescribed for her severe impairment, which was "well defined" and "a big deal." *Id.* at 40.

[8] The Commissioner also argues that Dr. Urbank is not an expert on prescription medications, *see* Def.'s Br. at 20, but the ALJ did not reject the physician's opinion on this ground, and this Court will not apply a post-hoc analysis to the ALJ's decision. *See Brown*, 595 F. App'x at 806. Moreover, and contrary to Defendant's argument, the ALJ specifically noted that Dr. Urbank "is a board-certified orthopedic surgeon and is well qualified to evaluate and opine as to the medical record concerning musculoskeletal impairments." AR 18.

7